IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| BRENDA L. EDWARDS,<br><br>    Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, ACTING COMMISSIONER OF SOCIAL SECURITY;<br><br>    Defendant, | Civil Action No. 3:24-CV-00244-CBB<br><br>United States Magistrate Judge<br>Christopher B. Brown |

# MEMORANDUM OPINION[1]
# ON CROSS-MOTIONS FOR SUMMARY JUDGMENT,
# ECF NOS. 7, 10

## I.   Introduction

Plaintiff Brenda Edwards filed her application for Widow's Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 402, *et seq.*, on October 29, 2021. ECF No. 8 at 1. Specifically, Edwards claimed that she became disabled beginning December 30, 2019 due to bipolar disorder, epilepsy, and migraines. *Id.* She then became eligible for Widow's Insurance Benefits on October 19, 2021 after her husband's passing. *Id.*

Edwards' claims were denied initially and then again on reconsideration. *Id.* at 2. She then sought a hearing before an Administrative Law Judge (the "ALJ") on September 5, 2023. *Id.* In a November 24, 2023 decision, the ALJ denied Edwards'

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. See 28 U.S.C. § 636, et seq.

request for benefits and found that Edwards was not disabled under the Act. *Id.* The Appeals Council declined to review the ALJ's decision on August 23, 2024. *Id.* at 2-3.

On October 16, 2024, Plaintiff filed a timely appeal with this Court and filed a motion for summary judgment. ECF No. 7. The Commissioner then filed a cross motion for summary judgment to which the Plaintiff filed a Reply. ECF Nos. 10, 13. The cross motions for summary judgment are fully briefed and ripe for consideration. ECF Nos. 7-8, 10-11, 13.

As set forth in more detail below, because the ALJ failed to develop the record – specifically as to Edwards' seizure history and lobotomy – the Court will grant summary judgment to Edwards, deny it as to the Commissioner, vacate the decision of the Commissioner to deny benefits and remand the matter to Commissioner pursuant to sentence four of § 405(g) for further development of the record as described below.

## II. Factual Background

The following summary is limited to information relevant to the current appeal. Edwards was 55 years old on the alleged onset date and almost 60 years old at the time of the ALJ's decision. ECF No. 4-2 at 37. She last worked as a phlebotomist at Penn Highlands Healthcare for two months in late 2018 but was fired during the probationary period. ECF No. 4-8 at 8. Prior to that, she worked part-time at a daycare from 2015-2017. ECF No. 4-2 at 51- 52. She has not worked since 2018. *Id.* at 51.

Edwards lived with her husband prior to his passing in 2021. *Id.* at 33. Edwards now lives alone in a small house on her son's property and takes care of most of the household chores herself. *Id.* Edwards has her driver's license and drives a few times a week to church and to visit her family. *Id.* Edwards primarily eats food that does not require cooking because she has previously left items on the stove and the smoke detector went off. *Id.*

As relevant to the current dispute, Edwards has epilepsy. ECF No. 4-2 at 27. Her seizures were poorly controlled for many years but are currently controlled with medication. *Id.* at 30. She had multiple brain surgeries to control the seizures, including a lobotomy where they put a ceramic plate in her head. *Id.* at 66. Edwards testified at the hearing that she was fired from her previous job as a phlebotomist because she "was forgetting to do steps," and that she "would forget to put the labels on some of the tubes . . . or forget the color of the tube. *Id.* at 51. Her former employer submitted a letter explaining she was fired during her probationary period "due to poor performance," but did not elaborate further. ECF No. 4-8 at 8.

At the hearing, Plaintiff's attorney argued that Edwards' seizure activity has caused her to have "difficulty remaining on task and concentrating." ECF No. 4-2 at 75. The attorney went on to say that she was fired from her prior job because she could not stay on task. *Id.* Edwards' attorney also claimed her forgetfulness "impacts her decision not to cook" and that "[s]he's eating peanut butter and banana

sandwiches because cooking, quite frankly, is kind of a hazard for her. Her smoke alarms are going off to remind her something's on the stove." *Id.*

The present dispute primarily focuses on Edwards' psychological assessments. There are three medical opinions in the record addressing Edwards' cognition. Two such opinions were submitted by the State agency psychologists, who both opined that Edwards had the ability to carry out short and simple instructions and that she had no limitations in her ability to understand, remember, or apply information. ECF No. 4-3 at 2-9, 11-18. The ALJ found both of these opinions persuasive. ECF No. 4-2 at 33.

Another psychological assessment was submitted by Edwards' physician's assistant, Shelbie Wood ("PA Wood"), who began treating her in 2020. In her July 2023 opinion, PA Wood opined that Edwards was "seriously limited" in her mental capacity due to the "long term effects of mental and physical illness." ECF No. 4-13 at 72-81. The ALJ found this opinion unpersuasive because it was "inconsistent with the medical evidence of record" and "not supported by the other opinions in the file." ECF No. 4-2 at 36. PA Wood's treating notes are also in the record. In her treating notes one month prior to her decision, PA Wood wrote Edwards had normal thought content and fair judgment, insight, and impulse control, among other notes showing her improvement. ECF No. 4-13 at 35-37.

### III. The ALJ Decision

The following summary is limited to information relevant to the current appeal. The ALJ found Edwards was the unmarried widow of the deceased insured worker who had attained the age of 50. ECF No. 4-2 at 27. At step one of the

sequential analysis, the ALJ found Edwards had not engaged in substantial gainful activity since her alleged disability onset date. *Id.* At step two, the ALJ found Edwards had multiple severe impairments including hypertension, obesity, epilepsy, bipolar disorder, personality disorder, and anxiety disorder. *Id.* At step three, the ALJ found Edwards did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 27-28.

At step four, the ALJ then found Edwards has the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c), with certain mental and physical limitations. *Id.* at 29-30.[2] Relying on the RFC, the ALJ found Edwards could not perform her past relevant work. *Id.* at 37. At step five, and relying on the testimony of the Vocational Expert, the ALJ found Edwards could perform several jobs that exist in significant numbers in the national economy, including the representative occupations of dryer attendant, washer, and laundry worker. *Id.* at 37-38. The ALJ then found that Edwards was not disabled. *Id.* at 38.

## IV.    Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining

---

[2] The RFC states Edwards can perform medium work "except for no climbing ladders, ropes, or scaffolds, as those are defined in the DOT/SCO; and no exposure to hazards, as those are defined in the DOT/SCO. [Edwards] can understand, remember, and carry out simple instructions; have frequent interactions with supervisors, coworkers, and/or the public; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; and can deal with occasional changes in a routine work setting." ECF No. 4-2 at 29-30.

whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g). If the Court finds substantial evidence supports the final decision, it must uphold it. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). It means "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[ ]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that they cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous

6

period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe;

(3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1;

(4) whether the claimant's impairments prevent them from performing their past relevant work; and

(5) if the claimant is incapable of performing their past relevant work, whether they can perform any other work which exists in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, they can perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

V.  **Discussion**

In her request for review, Plaintiff raises makes two arguments:
    (1)    The ALJ erred as a matter of law by improperly evaluating the medical opinion of PA Wood; and

      (2)    The ALJ erred by failing to resolve an inconsistency.

ECF No. 8 at 12-20.

### a. Whether the ALJ improperly evaluated the medical opinion of treating physician's assistant Shelbie Wood

Edwards first argues the ALJ's RFC determination is unsupported by substantial evidence and is the product of legal error because the ALJ improperly evaluated the medical opinion of treating physician's assistant Shelbie Wood ("PA Wood"). ECF No. 8 at 12-18. Edwards says the ALJ committed errors in both her supportability and consistency analysis, namely that the ALJ failed to adequately explain his reasoning. *Id.* at 14, 16. The Commissioner argues in opposition that the ALJ complied with the revised regulations and that his decision to exclude PA Wood's opinion is reasonable and supported by the evidence. ECF No. 11 at 11-13. The Court agrees with the Commissioner.

As Edwards notes, the two most important factors in determining the persuasiveness of medical opinions are consistency and supportability. *Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). *See also* 20 C.F.R. §§ 404.1520c(b) and (c). This case was filed after the regulations were amended on March 27, 2017, so the "treating physician rule" no longer applies, however the treating relationship remains a valid and important consideration. *Compare* 20 C.F.R. § 404.1527(c)(2) (applying to cases prior to the amendment of the regulations) *with* 20 C.F.R. § 404.1520c(a) (applying to later cases). *See also* 82 Fed. Reg. 5844-01, at 5853 (Jan. 18, 2017); *Hemenway v. O'Malley*, No. 22-345, 2024 WL 1013978, at *1, n. 2 (W.D. Pa. Mar. 8, 2024). Notably, an ALJ "need not

reiterate the magic words 'support' and 'consistent' for each doctor," so long as the ALJ "weave[s] supportability and consistency throughout [his] analysis of which doctors were persuasive." *Chung*, 2025 WL 1065241, at *3 (quoting *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024)).

The ALJ found PA Wood's July 2023 Mental Residual Functional Capacity Questionnaire unpersuasive, saying in his decision:

> The claimant's provider, Shelbie L. Wood, PA-C, completed a Mental Residual Functional Capacity Questionnaire in July 2023 and indicated the claimant was mostly "seriously limited, but not precluded" to "limited but satisfactory" in areas of mental ability and aptitudes needed to do unskilled work; and that the claimant would be absent more than four days per month (Exhibit 11F). This opinion is not persuasive. It is inconsistent with the medical evidence of record and is not supported by the other opinions in the file (Exhibit 1A; 3A). For example, Ms. Wood examined the claimant in June 2023 and reported the claimant was alert and oriented x4 with adequate grooming and hygiene; she had good eye contact, normal speech, and reported good mood. Ms. Wood noted that the claimant's affect "remains jocular and cheerful" and she had normal thought content and fair judgment, insight, and impulse control (Exhibit 10F/3-4). She continued her medications and recommended six month follow up (Exhibit 10F/4).

ECF No. 4-2 at 36. The Court finds that the ALJ adequately evaluated the supportability and consistency of PA Wood's opinion and finds no error.

First, the ALJ adequately analyzed supportability. Supportability means "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Stark v. Dudek*, No. 2:24-CV-1464, 2025 WL 1736485, at *4, n. 2 (W.D. Pa. June 23, 2025) (quoting *Cota v. Kijakazi*, 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022)). *See also* 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

9

support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).

Here, the ALJ found that PA Wood's July 2023 opinion was unsupported by her treatment notes from one month prior. ECF No. 4-2 at 36 (citing ECF No. 4-3 at 2-9, 11-18). In PA Wood's June 2023 treatment notes, she wrote Edwards had normal thought content and fair judgment, insight, and impulse control, among other notes showing her improvement. ECF No. 4-13 at 35-37. However, only one month later, PA Wood opined Edwards was "seriously limited" in her mental capacity – something that was not reflected in her recent treatment notes. *Id.* at 72-81. Courts have consistently upheld an ALJ's determination that an opinion is not persuasive where the medical provider's opinion conflicted with their own treatment notes. *See Tedesco v. Comm'r Soc. Sec.,* 833 F. App'x 957, 961 (3d Cir. 2020) ("The record supports the ALJ's conclusion as . . . the doctor's opinions conflict with his own treatment notes reflecting Tedesco's improving condition"); *Jordan v. Bisignano*, No. 2:24-1003, 2025 WL 2556577, at *1, n. 2 (W.D. Pa. June 18, 2025) (finding no error where "the ALJ analyzed the supportability of Ms. Boyer's opinion by comparing it to her treatment notes, which did not document supportive objective findings"); *Maneer v. Comm'r of Soc. Sec.*, No. 23-548, 2024 WL 3377909, at *1, n. 1 (W.D. Pa. July 11, 2024) (finding the ALJ's analysis adequate because the ALJ determined the medical opinion was not supported by the plaintiff's treatment records, which showed the plaintiff was "doing really good"). Accordingly, the ALJ's supportability analysis is adequate.

10

The ALJ's consistency analysis is also adequate. Consistency means "the extent to which the medical source's opinion is consistent with the record as a whole." *Stark*, 2025 WL 1736485, at *4, n. 2 (citing *Cota*, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The key difference between the two is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in the claim.'" *Gongon v. Kijakazi,* No. 22-cv-384, 2023 WL 3919467, at *11, 676 F.Supp.3d 383 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

The ALJ wrote PA Wood's opinion is "inconsistent with the medical evidence of record and is not supported by the other opinions in the file," citing to the two state agency psychologists' opinion. ECF No. 4-2 at 36 (citing ECF No. 4-3 at 2-9, 11-18). This is sufficient – the ALJ contrasted PA Wood's opinion with the state agency psychologists' opinions and PA Wood's own treatment notes, none of which found Edwards to be "seriously limited" in her mental capacity. Other Courts have found similar comparisons to the record to be adequate. *Dimter v. Comm'r Soc. Sec.*, No. 24-1350, 2024 WL 4986935, at *3 (3d Cir. Dec. 5, 2024) (finding that the ALJ did not err in giving a doctor's opinion less than controlling weight as there was evidence "both supporting and contradicting" the doctor's opinion, including medical records and a different doctor's opinion); *Maneer*, 2024 WL 3377909, at *1,

11

n. 1 (finding the ALJ's consistency analysis was adequate because the ALJ determined the opinion was "inconsistent with other evidence of record including Plaintiff's generally normal mental status examination findings); *Scott v. Kijakazi*, No. CV 20-1793, 2022 WL 2441059, at *1, n.2 (W.D. Pa. July 5, 2022) (finding the ALJ addressed consistency when he found the doctor's opinions were "inconsistent with most of the objective medical evidence").

Accordingly, the Court finds no error with the ALJ's analysis of PA Wood's opinion and finds it is supported by substantial evidence. Plaintiff's Motion for Summary Judgment is denied in this respect.

### b. Whether the ALJ sufficiently developed the record

Edwards next argues that the ALJ erred in his failure to sufficiently develop the record. ECF No. 8 at 18-20; ECF No. 13 at 4. Specifically, that there was an inconsistency in the record that warranted the ALJ to order a psychological consultative examination to address, on the one hand, her potential memory issues from Edwards' history of seizures, lobotomy, and other brain surgeries, and, on the other hand, her reported ability to pay attention. *Id.* Edwards argues the ALJ's final decision that Edwards was attentive and able to concentrate was based on a "sole treating note" and not supported by substantial evidence because the ALJ did not adequately resolve or address this inconsistency with the record information that suggested otherwise. *Id.* at 20; ECF No. 13 at 4-5. The Commissioner argues the ALJ did not have to order a consultative examination because there was sufficient evidence in the record to fully assess Edwards' claim. ECF No. 11 at 14-

15. The Court agrees with Edwards that the ALJ should have further developed the record.

The ALJ has "a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." *Plummer,* 186 F.3d at 434. An ALJ can order a consultative exam "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." *Ellinger v. Kijakazi*, No. 22-349, 2023 WL 8282057, at *1, n. 1 (W.D. Pa. Nov. 30, 2023); 20 C.F.R. § 416.919a(b). However, an ALJ is never *required* to order an exam, and the decision to do so is within the sound discretion of the ALJ. *Thompson v. Halter,* 45 Fed. Appx. 146, 149 (3d Cir. 2002). Although the ALJ has a duty to develop the record, the burden ultimately rests with the plaintiff to present evidence of his or her disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ's first error was failing to order a consultative exam to resolve this inconsistency in the record – whether Edwards has any long-term effects from her lobotomy, brain surgery, and history of uncontrolled seizures. PA Wood provided the only medical opinion taking a "longitudinal" view of Edwards' medical history. ECF No. 4-13 at 72. PA Wood explains her assessment "indicates the patient's current level of functioning due to long term effects of mental and physical illness," and that Edwards "has experienced chronic deficits related to her seizure disorder history that impedes her ability to maintain sustained attention." *Id.* at 74-75. As discussed above, the ALJ did not err in rejecting PA Wood's opinion. *Supra,* 7-11.

13

The ALJ rejected PA Wood's opinion for reasons unrelated to its longitudinal view; the ALJ felt Wood's opinion was undermined by her clinical notes from the month prior. ECF No. 4-2 at 36. But the only remaining psychological opinions on record do not specifically address the impact, if any, of Edwards' history of seizures, lobotomy, and other brain surgeries had on her cognition. ECF No. 4-3 at 2-9, 11-18. The opinions only state that she has a history of seizures/epilepsy, and separately, that Plaintiff complains she has memory-related symptoms. *Id.* at 3, 13.

Without PA Wood's opinion – the only opinion addressing whether Edwards' history of seizures, lobotomy, and other brain surgeries had any impact on her cognitive abilities – there were no other opinions in evidence addressing this issue.[3] With nothing in the record to resolve this inconsistency, there remains a significant gap in the record to support a disability determination here. The ALJ is authorized to obtain a consultative exam to resolve such inconsistencies and one would have been appropriate here. *See Brown v. Saul*, No., 2020 WL 6731732, at *4 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, No. CV 3:18-1619, 2020 WL 6729164 (M.D. Pa. Nov. 16, 2020) ("It is unclear from the ALJ decision, hearing, and medical record whether anxiety is a medically determinable impairment, the ALJ's overemphasis on a record regarding Plaintiff's ability to walk while omitting records indicating Plaintiff's inability to walk demonstrates inconsistencies in the

---

[3] The Commissioner argues that since Edwards did not ask for a consultative exam during the hearing, she is now making a "post hoc claim of insufficiency." ECF No. 11 at 14. Edwards produced PA Wood's opinion addressing this question, and could not have necessarily predicted it would be thrown out and that no medical opinion evidence on this question would remain in the record.

evidence"); *Miller v. Saul,* No. 3:17-CV-01452, 2019 WL 3776662, at *7 (M.D. Pa. Apr. 22, 2020) (finding, in a case where the sole relevant medical opinion had been discounted, that the "most prudent resolution . . . is for the ALJ to order a consultative examination so that the record is supplemented with proper medical evidence"). *See also Stripling v. Comm'r of Soc. Sec.,* No. 4:22-CV-00843, 2024 WL 6901310, at *4 (W.D. Mo. Mar. 25, 2024) ("[I]n disregarding the only physical [consultative exam] of record, whether the RFC's lack of physical functional limitations is supported by substantial evidence is questionable")

The ALJ's second error is that he does not discuss a major part of Edwards' medical history – her seizure history and brain surgeries – in the decision. While the ALJ does not need to discuss "every tidbit of evidence included in the record," the ALJ must consider all *pertinent* evidence and "explain [any] conciliations and rejections." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). An ALJ "must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett* v. *Comm'r of Soc. Sec*, 220 F.3d 112, 120 (3d Cir. 2000)).

Since there is some evidence in the record that Edwards could have long-term memory loss from her history of seizures and her lobotomy, the ALJ was on alert that her medical history may have created long-term medical issues for Plaintiff. PA Wood discussed the impacts in both her treatment notes from 2020, ECF No. 4-10 at 31 ("This writer did attempt to explain to the patient that changes in

15

personality and thought process are not uncommon following neurosurgery and that this may be potentially what we are seeing at this time"), and in her July 2023 opinion. ECF No. 4-13 at 74 ("The assessment above indicates the patient's current level of functioning due to long term effects of mental and physical illness"). Dr. Kevin Patterson,[4] who treated and diagnosed Edwards at Penn Highlands Behavioral Health alongside PA Wood, discussed this in his 2019 treatment notes. ECF No. 4-10 at 47 ("[Edwards] definitely had some brain damage over the years from the repeat seizures"). Edwards and her attorney also told the ALJ during the hearing that she may have long-term issues. ECF No. 4-2 at 59-60, 63, 75.

Given this, the ALJ could and should have resolved this issue and addressed it in his decision. *See Gable v. Kijakazi*, No. 1:21-CV-00194, 2022 WL 3084305, at *9 (M.D. Pa. Aug. 3, 2022) (remanding for a consultative exam after because the ALJ did not look into whether the plaintiff had full use of his thumb even though plaintiff raised the question at the hearing). However, the ALJ does not even mention Edwards' lobotomy or any impact the seizures may have had on her except to state Edwards has not had any seizures recently. *See, e.g.* ECF No. 4-2 at 27, 28.

To be clear, the ALJ does address Plaintiff's memory more generally. *See, e.g.* ECF No. 4-2 at 28. But without any discussion about the role her history of seizures and lobotomy may have played, or without a persuasive medical opinion, the Court is left guessing as to how the ALJ reached his ultimate decision regarding Plaintiff's memory and ability to concentrate. It is not clear whether the ALJ

---

[4] Dr. Patterson did not submit a medical opinion.

intentionally omitted this discussion because he did not find it relevant, or whether he substituted his own lay-opinion over that of a medical expert to determine it had no impact. *O'Neill, v. Bisignano*, No. 4:24-CV-2156, 2025 WL 3469271, at *10 (M.D. Pa. Dec. 3, 2025) (remanding because the ALJ relied "upon her own lay opinion to reject clinically supported treating source opinions"). More discussion of Edwards' seizure disorder and its potential impacts, if any, is needed, because right now the ALJ has not provided enough explanation of his reasoning to enable the Court to conduct a meaningful review. *See Diaz*, 557 F.3d at 504.

Accordingly, the decision must be vacated and the case will be remanded for further consideration consistent with this opinion.

## VI. Conclusion

Accordingly, for the foregoing reasons, the Court will grant summary judgment to Edwards, deny it as to the Commissioner, vacate the decision of the Commissioner to deny benefits and remand the matter to Commissioner pursuant to sentence four of § 405(g) for further development of the record as described above.

An appropriate order follows.

DATED this 18th day of December, 2025.

             BY THE COURT:

             s/Christopher B. Brown
             United States Magistrate Judge

CC: All counsel of record, *via ECF*